# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**SOCIAL POSITIONING INPUT SYSTEMS, LLC,**

**Plaintiff,**

v.

**FORWARD THINKING SYSTEMS LLC,**

**Defendant.**

**CASE NO. 2:22-CV-00150-JMA-AYS**

**JURY TRIAL DEMANDED**

**PATENT CASE**

## FORWARD THINKING SYSTEMS LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Neil J. McNabnay
Ricardo J. Bonilla, *pro hac vice* to be filed
Noel Chakkalakal, *pro hac vice* to be filed
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
rbonilla@fr.com
chakkalakal@fr.com

**ATTORNEYS FOR DEFENDANT
FORWARD THINKING SYSTEMS LLC**

Dated:  February 8, 2022

## **TABLE OF CONTENTS**

I.    NATURE AND STAGE OF PROCEEDINGS ..................................................... 1

II.   SUMMARY OF THE ARGUMENT .................................................................. 1

III.  STATEMENT OF FACTS ................................................................................. 2

      A.    The '365 Patent ...................................................................................... 2

IV.   ARGUMENT ...................................................................................................... 4

      A.    Legal Standard ........................................................................................ 4

          1.    This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6) ........................................................................................ 4

          2.    The Law of 35 U.S.C. § 101 .................................................................. 5

      B.    The '365 Patent is Invalid Under 35 U.S.C. § 101. ................................. 6

          1.    *Alice* Step 1: The claims are directed to an abstract idea............................6

          2.    *Alice* Step 2: The claims do not contain an inventive concept amounting to significantly more than the abstract idea. ...........................12

          3.    The remaining claims are dependent on Claim 1 and are also abstract ................................................................................................15

V.    CONCLUSION................................................................................................. 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016)..................................................................................9

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ....................................................................... *passim*

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
   687 F.3d 1266 (Fed. Cir. 2012)...............................................................4, 14

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018)......................................................................14

*Bilski v. Kappos*,
   561 U.S. 593 (2010)...................................................................................4, 5, 6

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014).....................................................................14

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014)...............................................................7, 10

*Cuvillier v. Sullivan*,
   503 F.3d 397 (5th Cir. 2007) ..........................................................................4

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011).......................................................................5

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014).......................................................................8

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980).........................................................................................5

*Diamond v. Diehr*,
   450 U.S. 175 (1981).........................................................................................6

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016).......................................................................8

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016).....................................................................10

*Fort Props., Inc. v. Am. Master Lease LLC*,
  671 F.3d 1317 (Fed. Cir. 2012) .................................................................6

*Intellectual Ventures I LL v. Capital One Bank U.S.A.*,
  792 F.3d 1363 (Fed. Cir. 2015) ...............................................................14

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) .......................................................8, 9, 15

*iSentium, LLC v. Bloomberg Fin. L.P.*,
  343 F. Supp. 3d 379 (S.D.N.Y. 2018) ......................................................4

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*,
  173 F. Supp. 3d 717, 2017 WL 1151052 (N.D. Ill. 2016) ......................11

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
  66 F. Supp. 3d 829 (E.D. Tex. 2014) ........................................................9

*MacroPoint, LLC v. FourKites, Inc.*,
  No. 15–cv–1002, 2015 WL 6870118 (N.D. Ohio Nov. 6, 2015) .............11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012) ..........................................................................6, 15

*Parker v. Flook*,
  437 U.S. 584 (1978) ...................................................................................6

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
  No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) .............7

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017) .................................................................10

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) .......................................................1, 10, 11, 13

*In re TLI*,
  87 F. Supp. 3d 773 .....................................................................................13

*Two-Way Media Ltd. v. Comcast Cable Comm'cns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017) ...........................................10, 11, 12, 14

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ...................4, 7, 12

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
  100 F. Supp. 3d 405 (D.N.J. 2015) ............................................... *passim*

**Statutes**

35 U.S.C. § 101 ................................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................2, 4, 6

## I.      NATURE AND STAGE OF PROCEEDINGS

On January 11, 2022, Social Positioning LLC ("Social Positioning") filed this lawsuit accusing Defendant Forward Thinking Systems LLC ("FTS") of infringing U.S. Patent No. 9,261,365. In particular, Social Positioning accuses FTS's use of its mobile website with associated hardware and software for determining vehicle locating services of infringing the '365 Patent.

## II.     SUMMARY OF THE ARGUMENT

The claims of the '365 Patent are directed to the abstract idea of sharing address information. But sharing address information is not a technological improvement, an inventive way of applying conventional technology, or even new. *See Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405 (D.N.J. 2015) (finding similar claims directed to the abstract idea of "monitoring **locations**, movement, and load status of shipping containers within a container-receiving yard, and storing, reporting and **communicating this information** in various forms through generic computer functions") (emphasis added).

The claims of the '365 Patent are not directed to an improvement in computer functionality. Rather, they are directed to "the use of conventional or generic technology in a nascent but well-known environment." *In re TLI Commc'ns LLC Patent Litig.,* 823 F.3d 607, 612, 614 (Fed. Cir. 2016) ("[H]ere we need to only look to the specification, which describes the [components] as either performing basic computer functions such as sending and receiving data, or performing functions 'known' in the art."). No particular non-conventional component or programming is either claimed or disclosed. Social Positioning's patent does no more than describe the basic idea of sending and receiving information related to addresses without disclosing any novel application of that idea.

Instead, as the applicant acknowledged, the approach for sharing address information described in the '365 Patent may be implemented using generic and conventional technology such

as "communication protocols or systems currently existing . . . for wirelessly transmitting data." The '365 Patent at 7:3–5. Indeed, the '365 specification makes clear that it comprises no novel components. *Id*. at 5:67–6:2 ("[s]uch input devices are standard and currently available on many electronic devices including portable digital assistants (PDAs) and cellular telephones."), 6:19–20 ("any other memory storage that exists currently"), 7:20–21 ("conventional code encryption algorithms currently in use"), 8:10–12 ("identity detection devices such as biometric devices are common and are currently widely in use"). Therefore, the '365 Patent is invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter.

Resolving these issues does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating invalid patents, FTS respectfully requests that the Court dismiss the Complaint for failure to state a claim. FED. R. CIV. P. 12(b)(6).

## III.    STATEMENT OF FACTS

### A.    The '365 Patent

The '365 Patent, entitled "Device, system and method for remotely entering, storing and sharing addresses for a positional information device," issued on February 16, 2016 from an application filed on September 9, 2009. The applicant contends to have identified and solved problems associated with GPS devices which store addresses locally. See *id*. at 1:46–2:25. The patent, however, merely implements an abstract idea using conventional components and protocols that were known in the prior art.

Independent claim 1 of the '365 patent, which is representative, recites:

1. A method for receiving location information at a positional information device, the method comprising:

sending a request from a requesting positional information device to a server for at least one address stored in at least one sending positional information device, the request including a first identifier of the requesting positional information device;

> receiving at the requesting positional information device, from the server, a retrieved at least one address to the requesting positional information device wherein the server determines a second identifier for identifying the at least one sending positional information device based on the received first identifier and retrieves the requested at least one address stored in the identified at least one sending positional information device.

*Id.* at cl. 1.

Claim 1 of the '365 Patent is directed to a method of sharing addresses. Methods for sharing addresses with GPS devices are generically described in the specification. *Id*. at 8:23–34 ("system and method for remotely entering, storing and sharing location address information will be described For example, the specification states that in."). The embodiments described in the specification center on sharing address information. See *Id* at 9:29–32 ("[i]n one embodiment, the customer service center includes a live operator 303 that has access to server 304 for looking up address information and transmitting the information to the device."). The specification also describes a situation in which "[a] driver of a vehicle needs assistance in locating a point of interest such as a museum in a designated city." *Id* at 12:27–28. The applicant did not provide any technical details on how information is shared beyond what was known in the prior art.

In Claim 1, the positional information device "send[s] a request . . . for at least one address" to a server. The request includes "a first identifier" for identifying the requesting positional information device. The server obtains the requested address from a "sending positional information device." The sending positional information device is identified by a "second identifier." The positional information devices are understood to be GPS devices. *See generally*, the '365 Patent. In other words, Claim 1 recites a generic technique to establish a communications link between one or more devices and transfer information. No technical details are disclosed, much less claimed, as to how these processes are accomplished. Claim 1 simply recites generic and well known hardware components.

## IV.    ARGUMENT

### A.    Legal Standard

#### 1.    This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6)

Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *iSentium, LLC v. Bloomberg Fin. L.P.*, 343 F. Supp. 3d 379, 382 (S.D.N.Y. 2018). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Id.* (citing *Ashcraft v. Iqbal*, 446 U.S. 662, 679 (2009)). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft*, 556 U.S. 678 (2009) (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *see also iStentium*, 343 F. Supp. 3d 383–84. Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266,

1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### 2.    The Law of 35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611-12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying

a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297-98, 1300-01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191-92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

## B.    The '365 Patent is Invalid Under 35 U.S.C. § 101.

Social Positioning's Complaint should be dismissed. The claims of the '365 Patent are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each of the claims is directed to the abstract idea of sharing address information. Abstract ideas are not eligible for patenting. None of the claims contains an "inventive concept sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because Social Positioning has failed to state a claim upon which relief may be granted, FTS respectfully requests that the Court grant its motion and dismiss this case with prejudice. FED. R. CIV. P. 12(b)(6).

### 1.    *Alice* Step 1: The claims are directed to an abstract idea.

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the '365 Patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of sharing address information. *See Alice*, 134 S. Ct. at 2356; *Bilski*, 561 U.S. at 611.

#### (a)    The '365 Patent is directed to the abstract idea of sharing address information.

Claim 1 of the '365 Patent is directed to the abstract idea of sharing address information.[1] Stripped of its conventional terminology (i.e., "the request including a first identifier of the requesting positional information device" and "wherein the server determines a second identifier for identifying the at least one sending positional information device based on the received first identifier), Claim 1 boils down to this mere unpatentable idea. In other words, with the generic terminology removed, the claim conceivably could cover any generic process of sharing address information. This is especially true given the purely functional nature of the claim language. For example, Claim 1 could cover the following scenario: (1) using a connection to request an address (e.g., calling a friend to ask for another friends address); and then (2) receiving address information (e.g., the friend providing the other friends address). Such a broad concept is not patent eligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715.

Furthermore, the applicant instructed that his purported invention was not limited to any particular implementation. '365 Patent at 4:16-20 ("it is to be understood the principles of the present disclosure may be applied to any type of navigation or positional information device including but **not limited** to a vehicle-mounted device, a GPS receiver coupled to a desktop computer or laptop, etc."); 9:25-29 ("Once connected to the customer service center, the user can communicate with the customer service center with Voice communications or with a vehicle user interface (VUI) including but **not limited** to keyboard, Voice recognition, or mouse or pointer") (emphasis added)). The specification, coupled with the broad functional language in Claim 1,

---

[1] Asserted Claim 1 of the '365 Patent is representative of all claims. *See, e.g.*, *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8-9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea.").Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

confirm that Social Positioning's claims do not describe how to implement the allegedly claimed system, much less how to do so in any non-conventional manner. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (concluding that claim not directed to patent-eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation").

Additionally, the applicant's own characterizations demonstrate that the claimed components do not "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or improving "the way a computer stores and retrieves data in memory," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). For example, in *Enfish*, the Federal Circuit distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices," holding instead that "they [we]re drawn to a specific improvement to the way computers operate." *Id.* at 1336. In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. Unlike *Enfish*, nothing in the claims of the '365 Patent shows any unconventional methodology that would amount to a "specific improvement in the way computers operate." Therefore, the focus of the '365 Patents is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336. The "focus" of Claim 1, instead, is sharing address information:

| Claim Language | Claimed Idea |
|---|---|
| 1. A method for receiving location information at a positional information device, the method comprising: | |
| sending a request from a requesting positional information device to a server for at least one address stored in at least | Requesting information |

8

| | |
|---|---|
| one sending positional information device, the request including a first identifier of the requesting positional information device; | |
| receiving at the requesting positional information device, from the server, a retrieved at least one address to the requesting positional information device wherein the server determines a second identifier for identifying the at least one sending positional information device based on the received first identifier and retrieves the requested at least one address stored in the identified at least one sending positional information device. | Receiving information |

By only claiming the desired result—sharing address information—without describing any specific roadmap for doing so, Claim 1 of the '365 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348; *see also Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) (holding that claims were directed to an abstract idea where they claimed "the function of wirelessly communicating regional broadcast content to an out-of-region recipient, not a particular way of performing that function"). And because the claimed system can be implemented "using any means such as wireless communication, infrared light or a BlueTooth radio link" and "may make use of any telephone technology," the '365 Patent risks preempting *all* automated methods or systems for sharing address information. *See, e.g.*, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature, they [did] not provide any significant description of the particular means by which the various recited functions are performed," and "[a]ll that [was] disclosed [was] the ultimate objective").

The additional claim limitations recite a series of hardware sensors (e.g., a "pressure sensor") and modules (e.g., a "Global Positioning Systems module"). These limitations do nothing more than recite generic and well known hardware to implement the abstract idea.

**(b)      Courts have found similar claims to be directed to patent-ineligible subject matter.**

Courts have found similar patent claims to be directed to abstract ideas. Courts have found the following claims directed to various acts of information or data acquisition and transfer (including, among others, acquiring, analyzing, sending, receiving, and publishing data) to be abstract ideas under the *Alice* test:

- Systems and methods for performing **real-time monitoring** of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results, *Electric Power Group*, 830 F.3d at 1351 (emphasis added);

- Claims for **collecting** data, recognizing certain data within the collected set, and storing that data, *Content Extraction and Transmission LLC v. Wells Fargo Bank, National Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (emphasis added);

- Claims directed to **transmitting information** about a mail object over a network using a personalized marking, *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 908 (Fed. Cir. 2017) (emphasis added);

- A device used for recording a digital image, storing the digital image, and **transferring** the digital image to a server for further processing, *In re TLI Commc'ns,* 823 F.3d 607, 609 (Fed. Cir. 2016) (emphasis added);

- A method claiming the functional results of converting, routing, controlling, **monitoring**, and accumulating records, *Two-Way Media Ltd. v. Comcast Cable Comm'cns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) emphasis added;

- Claims directed to collecting and **analyzing information** to detect misuse, and **notifying** a user when misuse is detected, *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093–95 (Fed. Cir. 2016) (emphasis added); and

- A device used for recording a digital image, storing the digital image, and **transferring** the digital image to a server for further processing, *In re TLI Commc'ns,* 823 F.3d 607, 609 (Fed. Cir. 2016) (emphasis added).

Additionally, a number of cases dealing with patents directed to freight monitoring were found directed to the abstract idea of monitoring and communicating information. In *Wireless Media Innovations*, for example, the court invalidated two patents for a system and method of "monitoring locations, movement, and load status of shipping containers within a container-receiving yard, and storing, reporting and communicating this information in various forms through generic computer functions." 100 F.Supp.3d 405, 413 (D.N.J. 2015). This was an abstract idea, according to the court, because these general monitoring and recording functions "could be carried out by human memory, by hand, or by conventional equipment and general purpose computer and printer resources." *Id*. at 415. *See, also, Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 726, 2017 WL 1151052 (N.D. Ill. 2016) (claims found to be "directed to the abstract idea of monitoring and controlling property and communicating this information through generic computer functions"); *MacroPoint, LLC v. FourKites, Inc.*, No. 15–cv–1002, 2015 WL 6870118, at *3 (N.D. Ohio Nov. 6, 2015) ("directed to the abstract idea of tracking freight").

The idea underlying Claim 1 of the '365 Patent is just as abstract as that of the *Two-Way Media* and *Wireless Media Innovations* claims. Claim 1 does not include any specific limitations or steps regarding a "specific structure" of computer components used to carry out the abstract idea of sharing address information. Rather, Claim 1 uses results-based functional language like "establish" a communications link, "configure[]" the link to send/receive data, "process[]" the data to be "displayed" or "forwarded." Claim 1 is abstract because it does "not sufficiently describe

how to achieve these results in a non-abstract way." *Two-Way Media*, 874 F.3d at 1337 (holding limitations requiring "sending" and "directing" of information "d[id] not sufficiently describe how to achieve these results in a non-abstract way"). Claim 1 cannot be meaningfully distinguished from the claims in either *Two-Way Media* or *Wireless Media Innovations*.

        2.    *Alice* **Step 2: The claims do not contain an inventive concept amounting to significantly more than the abstract idea.**

Because Claim 1 is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, Claim 1 "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, Claim 1 is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

Although the stated goal of the '365 Patent is to provide "improved means of communications" via a "programmable communicator," '365 Patent at 1:46; 4:19-21, not a single technical improvement is disclosed, much less claimed. Instead, Claim 1 is described only at a high level, consisting of generic functional language like "establish" a connection, "configure" a monitoring device to send/receive data "periodically," and "forward" or "display" the monitored information. And, according to the specification, any "telecommunication standard" may be used to send and receive information. *Id.* at 2:2; 12:24-26.

While the specification purports to describe the structure of an embedded system capable of sharing address information, nothing in either Claim 1 or the specification discloses how the remote "data monitoring devices" must be configured in any manner, much less an inventive one. Instead, the claim uses results-based functional language like "establish" and "configure," and then

requires "periodically" "forward[ing]" or "display[ing]" the data received. Additionally, the claim limitations simply list generic hardware and types of data without any improvement in technology. *See In re TLI*, 87 F. Supp. 3d 773, 794 (holding that a "telephone unit limitation is another example of **generic hardware** which does not save Claim 17 because it is **not inventive**") (emphasis added). And the specification fares no better, explicitly stating that the devices are a "combination of existing technologies and features" using "straightforward procedure[s] to communicate with the programmable communicator." '365 Patent at 9:29-30; 9:58-59. Further details are neither claimed nor disclosed.

There is simply nothing "inventive" about using a known process (e.g., a telecommunications standard or Bluetooth) to monitor data. *See id*. at 9:38-46 (the invention is "described in the context of the GSM mobile telecommunications standard" but may "relate[] to all telephone standards including, and not limited to CDMA and US-TDMA"). Moreover, the abstract functional descriptions in Claim 1 are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Nothing in Claim 1 requires any inventive algorithm or data structure, much less an improved computer component. *See Wireless Media Innovations,* 100 F. Supp. 3d 405, 416-417 ("[A]dding a computer to otherwise conventional steps does not make an invention patent-eligible. Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis.").

Courts have repeatedly held that the presence of generic hardware and processing like the kind recited in Claim 1 of the '365 Patent does not make an otherwise abstract idea patent-eligible.

See, e.g., *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Two-Way Media*, 874 F.3d at 1339 (finding no inventive concept when "[n]othing in the claims . . . requires anything other than conventional computer and network components operating according to their ordinary functions"); *Wireless Media Innovations*, 100 F. Supp. 3d 405, 416 (finding that the asserted claims "are not tied to any particular novel machine or apparatus, only a general purpose computer, general communication devices, and general vehicles," and the "specific system elements . . . merely require generic computer functions that are not inventive."); *see also Bancorp*, 687 F.3d at 1276-77. In addition, an "abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as [communications over an RF band]." *Intellectual Ventures I LL v. Capital One Bank U.S.A.,* 792 F.3d 1363, 1366 (Fed. Cir. 2015).

This case is thus unlike *Berkheimer*, where the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The Federal Circuit then examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id*. But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id.* Here, in contrast, there is no need for fact discovery at all because neither the claims nor the specification describes any unconventional components or the use of generic components in some

14

unconventional manner. The claims therefore fail *Alice*'s second step because they contain no inventive features, and no amount of fact discovery can change that.

The recited limitations—whether considered individually or as an ordered combination—are insufficient to add "significantly more" to the abstract idea. Because it is altogether devoid of any "inventive concept," Claim 1 of the '365 Patent is thus patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359-60.

### 3. The remaining claims are dependent on Claim 1 and are also abstract

The remaining claims of the '365 Patent relate to the same abstract concept of sending and receiving information. The only differences are immaterial in the context of a § 101 analysis. The dependent claims relate to (i) the order of processing (dependent claim 3), (ii) additional generic hardware (dependent claims 5, 6, 9, 10, 18, 24, 25), (iii) alternative communication standards (dependent claims 2, 12, 14, 16, 20, 22, 23, 28, 30), or (iv) additional sent or received data (dependent claims 4, 7, 8, 11, 13, 15, 17, 19, 21, 26, 27, 29).

But claiming alternative communication standards (like Bluetooth) and varying the types of data sent and received is not inventive. And specifying the order of processing is a token or insignificant pre-solution activity insufficient to transform the abstract idea into patent-eligible subject matter. *See Mayo*, 132 S. Ct. at 1297-98, 1300-01. So too is the claims' identification of additional generic components—particularly because there is no disclosure of how any of the generic components (e.g., wearing sensors on the body) must be configured in any "inventive" manner to accomplish the desired results. *See Internet Patents*, 790 F.3d at 1348.

None of these additional features amounts to an inventive feature or renders the claims any less abstract. Regardless of their form, therefore, all of the claims of the '365 Patent fail both

prongs of *Alice* because they are directed to an abstract idea and recite no inventive concept. *Alice*,
134 S. Ct. at 2355, 2357.

## V.        CONCLUSION

For the foregoing reasons, FTS respectfully requests that the Court dismiss Social
Positioning's Complaint for failure to state a claim upon which relief can be granted. Because
leave to amend would be futile, FTS requests dismissal with prejudice.

Dated: February 8, 2022                                Respectfully submitted,

                                                       **FISH & RICHARDSON P.C.**


                                                       By:   */s/ Neil J. McNabnay*
                                                             Neil J. McNabnay
                                                             Ricardo J. Bonilla, *pro hac vice* to be filed
                                                             Noel Chakkalakal, pro hac vice to be filed
                                                             1717 Main Street, Suite 5000
                                                             Dallas, TX 75201
                                                             (214) 747-5070 (Telephone)
                                                             (214) 747-2091 (Facsimile)
                                                             mcnabnay@fr.com
                                                             rbonilla@fr.com
                                                             chakkalakal@fr.com


                                                       **ATTORNEYS FOR DEFENDANT
                                                       FORWARD THINKING SYSTEMS LLC**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on February 8, 2022, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Neil J. McNabnay*
 Neil J. McNabnay
